# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 10, 2011 Session

## STATE OF TENNESSEE v. KEITH HOWARD

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-B-1400     Cheryl A. Blackburn, Judge**

—————————————————

**No. M2011-00621-CCA-R3-CD - Filed July 18, 2012**

—————————————————

Defendant, Keith Howard, appeals the trial court's revocation of his probation sentence. Defendant pled guilty to selling more than .5 grams of cocaine with an agreed ten-year sentence, which was suspended except for ninety days, with credit for time served. The remainder of the ninety days was to be served on weekends. Subsequently, a probation violation warrant was filed, which alleged that Defendant had failed to follow his probation officer's instruction that he submit to a drug test and that he absconded during his drug screen. Following the hearing the trial court revoked Defendant's probation and entered a judgment placing Defendant's original sentence into effect. We conclude that the evidence does not preponderate against the trial court's finding of a violation, and that the trial court did not err by placing the original sentence into effect by ordering service in confinement. We therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Drew Justice, Franklin, Tennessee, (on appeal), and David Wicker, Nashville, Tennessee, (at trial), for the appellant, Keith Howard.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Shannon Poindexter, Assistant District Attorney General; Jeff Burks, Assistant District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

At the plea submission hearing, the Assistant District Attorney General gave the following information as a factual basis for the plea:

[O]n December 14th, 2004, a confidential and reliable informant working in conjunction with the Metro Police Department and the FBI purchased 10.7 grams of cocaine from [Defendant] at the barbershop located at 602 16th Avenue here in Davidson County. The transaction between the confidential informant and [Defendant] was audio recorded. Agents observed [Defendant] go in and out of the barbershop during the time of the transaction. And during a subsequent interview [Defendant] made statements to the agents with regard to additional fees and charges that were paid to the barbershop owner for his use of the barbershop as a location to sell drugs. [Defendant] was also interviewed on April 1st, 2005, at which time he did admit to selling cocaine on a regular basis from the barbershop.

**II. Probation Violation Hearing**

At the hearing, the trial court granted the State's request to amend the probation violation warrant because Defendant had been arrested for both evading arrest and criminal impersonation on August 21, 2010. He was convicted on January 13, 2011. The trial court also gave the following background information concerning petitioner's file:

Keith Howard, on 8-30 of '07 he pled guilty to Count 3, sale of over point five grams of cocaine, sentenced to ten years, had to serve thirty days on consecutive weekends and then placed on probation with a $2,000 fine. Then on 9-5 of '08 we had a probation violation where he had to serve sixty days and then was placed back on probation for the balance of the sentence. And then this was - - I signed on April the 17th of '09 warrants brought to me by Ms. Duhack indicating he had failed to submit to a drug test and, let's see, failed to follow the probation - - her orders. This is April of '09. Then we've amended it to include two new convictions. And then this was finally served on him January the 12th of this year. So assume he also hasn't been in contact with probation during that time.

Jeff Houchins, a general manager for American Roofing and Sheet Metal testified that Defendant was employed there from September of 2009 until he was laid off in November

of 2010. He said that Defendant was a diligent worker and did just about anything asked of him. It was also pleasant to work with Defendant. There was no problem with Defendant's work ethic, and he never gave the company a reason to test him for drugs. Mr. Houchins testified that Defendant was laid off during the winter season and was supposed to come back to work but injured his leg. Mr. Houchins said that he would consider Defendant for a job again if Defendant was released from jail and applied for a position. He was aware that Defendant had past problems but was not sure that he knew Defendant had a felony drug conviction.

Defendant conceded that he "didn't do the drug test, he hasn't reported in that period of time, and then he has these three new convictions." However, he wanted to give the court an explanation for the violations. Defendant testified that he began using marijuana and dealing drugs around the age of thirteen or fourteen. He first went to prison at the age of nineteen and has been incarcerated for most of his adult life. Defendant testified that his first probation violation occurred because he tested positive for marijuana. He acknowledged that he had a drug problem.

Defendant testified that after the first violation, he entered a drug treatment program at Meharry Medical College. He attended approximately six treatments or classes and was told that he had thirty days to stop using drugs or he would be kicked out of the program. Defendant said that he stopped using drugs for "two to three weeks." However, as the time for his drug test approached, his counselor advised him to stop using drugs because he could be kicked out of the program, and his probation would be revoked. At that point, Defendant said that he stopped going to treatment because he did not want to return to jail. He stopped treatment in April of 2009, about two or three weeks before the second probation violation warrant was issued.

Defendant testified that he was called on April 13, 2009, by his probation officer to do a drug screen. He explained that he had been working in the sun that day on the Ryman Auditorium and after being at the probation office for approximately an hour, was unable to give a sample. He said that while he was waiting, his foreman called and told him that he would be terminated if he did not return to work. Defendant claimed that he looked for his probation officer but could not find her so he went back to work without providing a urine sample. Defendant said that he called the probation office after he left work that day to set up another appointment but the person at the front desk indicated that his probation officer was gone for the day.

Defendant testified that he returned to work the following day and used a co-worker's cell phone to call the probation office. He was again advised that his probation officer was out of the office. Defendant said that the person said, "[W]ell, you didn't give urine, so

-3-

that's automatic grounds for refusal and as being dirty." He said that the person also informed him that he was "being violated." Defendant testified that he did not turn himself in at that point because he continued working. He said that "it was the first time in [his] life that [he] was given an opportunity to do something right and be positive and working." Defendant testified that he was "paying taxes, and it looked good and felt so good to work and see a check that [he] didn't want to give up and . . . turn [himself] into jail." He said that he did not deal drugs, but had "relapsed with smoking marijuana." Defendant testified that he ran when police came to arrest him because he did not want to be locked up again. He said, "So I evaded them." Defendant testified that he was finally arrested for the violation after being robbed and shot one day on his way back to work.

At the conclusion of the hearing, the trial court stated:

Well, obviously Mr. Howard violated his probation. This is not his first time. It's the second time. Looking back at the file, this was an extensive drug situation, drug deal. Mr. Howard, interestingly enough, was the one who sold most of the cocaine out of the barbershop that this was done. Back when it occurred, it was no small operation. With that being said the State agreed to ten years on probation. But what Mr. Howard has done since then is he didn't take a drug test, he left. He may have some explanation for that. But then he just drops out of sight for a year and a half. And his own statement is he just didn't want to go back to jail because he knew he was going to go back to jail because he hadn't been reporting. He got shot in the leg, which brings him here, which also is going to prevent me from sending him to CCA because they have absolutely no ability to deal with him in his physical condition as he is.

### III. Standard of Review

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, 311. The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation is subject to an abuse of discretion standard of review, rather than a *de novo* standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation or community correction sentence has occurred. *Id.*; *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment, rather than

acting arbitrarily. *Gregory*, 946 S.W.2d at 832; *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

In this case, as he conceded, Defendant violated the terms and conditions of his probation by failing to submit to a drug test and failing to report to his probation officer. He admitted that he ran when officers came to arrest him for the violation, and he specifically said, "So I evaded them." This resulted in additional charges against Defendant. The record reflects that the warrant for the current probation violation was issued on April 17, 2009, and was not served on Defendant until January 12, 2011, at the time that he was shot in the leg during an alleged robbery. The trial court did not abuse its discretion by revoking Defendant's probation, and in fact Defendant concedes on appeal that the trial court correctly revoked his probation.

Defendant's main contention is that the trial court should have granted him split confinement and drug treatment instead of ordering him to serve his original sentence in confinement. He argues that the trial court erroneously relied on the severity of the underlying offense and that the trial court erroneously considered that the "jail's lack of medical facilities would 'prevent' it from allowing [Defendant] split confinement and drug treatment." Upon finding that a defendant has violated the conditions of probation, the trial court may revoke probation and either: (1) order defendant's incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for a period not to exceed two years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); T.C.A. § § 40-35-308, -310, -311. In this case, we point out that Defendant had previously violated his probation and agreed to serve sixty days before being reinstated to probation. However, Defendant continues to violate his probation. This Court has held "that an accused, already on probation, is not entitled to a second grant of probation or any other form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CCA-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., Feb. 10, 1999) *perm. app. denied* (Tenn., June 28, 1999). Therefore, the trial court did not abuse its discretion in ordering Defendant to serve his original sentence in confinement.

## CONCLUSION

After a thorough review of the record before us, we conclude that the trial court did not err in revoking Defendant's probation and imposing his original sentence to serve.

_____
THOMAS T. WOODALL, JUDGE

-5-